**Ruth SPIVEY, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of the Social Security Administration, Defendant.**

### No. 6:99CV885ORL22JGG.

United States District Court,
M.D. Florida,
Orlando Division.

March 2, 2001.

---

Robert Edward McCall, Jr., Law Office of Robert E. McCall, Melbourne, FL, for plaintiff.

Susan Roark Waldron, Patricia A. Willing, U.S. Attorney's Office, Tampa, FL, for defendant.

## ORDER

CONWAY, District Judge.

This cause came on for consideration upon the filing of a complaint seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits (Doc. No. 1).

The United States Magistrate Judge has submitted a report recommending that the decision of the Commissioner be reversed and that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

After an independent *de novo* review of the record in this matter, and noting that no objections were timely filed, the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendations.

Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation filed February 9, 2001 (Doc. No. 22), is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. The decision of the Commissioner is hereby **REVERSED,** and this case is **REMANDED** for further proceedings consistent with the Report and Recommendation.

3. The Clerk is directed to enter judgment accordingly, and **CLOSE** the file.

### Report and Recommendation

GLAZEBROOK, United States Magistrate Judge.

Plaintiff Ruby Spivey appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability and disability insurance benefits. *See* Docket No. 1 (complaint). For the reasons set forth below, the Commissioner's decision should be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).

### I. PROCEDURAL HISTORY

On July 5, 1995, plaintiff Ruby Spivey protectively filed her claim for disability benefits, claiming disability as of March 23, 1994. R. 20, 73. On April 22, 1997, the Honorable Henry U. Snavely, Administrative Law Judge ["ALJ"], held a hearing on Spivey's claim in Melbourne, Florida. R. 32—71. Attorney Charles J. Roberts represented Spivey at the hearing. R. 32. The ALJ heard testimony by Spivey, but did not utilize a Vocational Expert.

On November 14, 1997, the ALJ issued his decision that Spivey was not entitled to disability and disability insurance benefits. R. 13. Following his review of the medical and other record evidence, the ALJ found that Spivey could not perform her past

relevant work as a an electronic board assembler. R. 21, Finding 6. The ALJ found that Spivey retained the residual functional capacity to perform the physical exertion requirements of work except for lifting more than 10 pounds with both hands. The ALJ found that Spivey could perform the full range of the physical exertional requirements of sedentary work. R. 21, Finding 7. The ALJ applied the Medical–Vocational Guidelines, and concluded that Spivey was not disabled. R. 21, Finding 11.

On May 19, 1999, the Appeals Council denied review. R. 4—5. Spivey timely appealed the Appeals Council's decision to deny review to the United States District Court. Docket No. 1. On March 9, 2000, Spivey filed a memorandum of law in support of her appeal of the denial of review. Docket No. 16. On April 25, 2000, the Commissioner filed a memorandum in support of his decision that Spivey was not disabled.[1] Docket No. 19. This Court heard oral argument of the appeal on November 14, 2001. Docket No. 21. The appeal is ripe for determination.

### II. THE PARTIES' POSITIONS

Spivey assigns four errors to the Commissioner. First, Spivey claims that the Commissioner improperly discredited Spivey's testimony as to her pain. Second, Spivey claims that the Commissioner improperly weighed the medical conclusions of the treating physicians and medical experts. Third, Spivey claims that the Commissioner failed to assess the effect of her physical limitations through expert testimony. The Commissioner argues that substantial evidence supports his decision to deny disability.

---

1. Despite this Court's specific order requiring the parties to provide *"pinpoint* citations of authorities in support of the party's position, and to the administrative record," [Docket No. 14, Scheduling Order at 2 (emphasis supplied)], neither party provided this Court with adequate citations. As a result, this Court spent significant and unnecessary time and effort in finding supporting cites in the administrative record. In the future, disregard of this Court's Scheduling Order will not be sanctioned and will carry serious ramifications.

## III. *THE STANDARD OF REVIEW*

### A. *Affirmance*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995), *citing Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982) and *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *accord, Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991).

■ Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord, Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir.1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B. *Reversal or Remand*

■ Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42. U.S.C. § 405(g) (Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1066 (11th Cir.1994); *accord Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir.1991); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. *Bowen v. Heckler,* 748 F.2d 629, 631, 636—37 (11th Cir.1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater,* 99 F.3d 1086, 1089—92, 1095, 1098 (11th Cir.1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson,* 99 F.3d at 1090—91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris,* 621 F.2d 688, 690 (5th Cir.1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

■ Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision. *Falcon v. Heckler,* 732 F.2d 827, 829–30 (11th Cir.1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler,* 721 F.2d 726, 729 (11th Cir.1983) (neces-

sary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

■ In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material—relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090–92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir.1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir.1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.[2] *Id.*

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

### A. Treating Physicians

■■ Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1439–1441 (11th Cir.1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *Sabo v. Chater, Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D.Fla.1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was

---

**2.** The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n. 4 and surrounding text. In a sentence-four remand,

the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir.1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

### B. *Developing the Record*

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir.1988);

*Cowart v. Schweiker*, 662 F.2d 731, 735–36 (11th Cir.1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. *See Cowart*, 662 F.2d at 735–36. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir.1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir.1982). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

### C. *Medical Tests and Examinations*

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir.1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir.1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984) (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. § 416.917 (1998).

## D. *The Five Step Evaluation*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

 In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.*, 985 F.2d at 534.

 The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir.1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir.1978).

## E. *Other Work*

 Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the Medical–Vocational Guidelines [the "grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

 Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002–03 (11th Cir.1987). In almost all of such cases, the Commissioner's burden can be

met only through the use of a vocational expert. *Foote,* 67 F.3d at 1559; *Chester v. Bowen,* 792 F.2d 129, 132 (11th Cir.1986); *see also MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan,* 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker,* 641 F.2d 243, 248 (5th Cir.1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote,* 67 F.3d at 1559.

### 1. *Pain*

■■■■■ Pain is a non-exertional impairment. *Foote,* 67 F.3d at 1559, 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. *Credibility*

■■■■■ Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561–62; *Jones v. Department of Health and Human Services,* 941 F.2d 1529, 1532 (11th Cir.1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987); *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote,* 67 F.3d at 1561–62; *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir. 1988).

■■■ A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker,* 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater,* 67

F.3d at 1562 (quoting *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir.1983)) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

## V. APPLICATION AND ANALYSIS

Substantial evidence does not support the ALJ's finding that Spivey has the residual functional capacity to perform the full range of "sedentary" work. The ALJ did not give the proper weight to all of the medical evidence in the record.

### A. The Facts

Spivey was 46 years old on the date of the ALJ's decision. R. 13. She has a ninth grade education. R. 110. She has worked over the past 17 years as an electronics printed circuit board assembler. R. 283. Spivey alleges an onset date of March 23, 1994. She met the insurance status requirements through the date of the ALJ's decision.

Spivey claims that she is disabled due to carpal tunnel syndrome, bilateral thumb problems, tendinitis of the left and right thumbs with a positive grind test and bilateral CMC joint subluxation. Docket No. 283. Spivey also claims that she suffers from diabetes mellitus, coronary artery disease, hypertension, obesity, and knee problems. Spivey further claims that she suffers headaches two to three times a week, chest pain every day, and knee pain and swelling. R. 48, 60, 69, 284.

Spivey claims that she can only lift items of less than five pounds. R. 53. She testified that her sister does all the housework, shopping and cooking. R. 53—54. In a questionnaire dated March 1997, Spivey stated that she continued to have pain in both hands, but she was still able to drive several times a week, bathe herself, and occasionally make the bed. R. 52—54.

The medical evidence shows that Spivey has suffered from bilateral carpal tunnel syndrome with subjective complaints of numbness, pain, and tingling in her hands. Dr. Hermansdorfer, a hand surgeon, treated Spivey from March 1994 through July

1996. He treated Spivey on a conservative basis with therapy. However, Spivey still complained of pain and therefore, in June 1994, she underwent a left thumb carpometacarpal ligament reconstruction. R. 190. However, Spivey continued to have a limited range of motion of the left thumb. R. 189. Additionally, she complained of diffuse pain and tenderness in the left wrist and hand and right thumb. R. 187–88.

In November 1994, she complained of increased numbness and tingling in her left and right hands. R. 186. Examination revealed bilaterally positive Tine's and positive median nerve compression tests. Nerve-conduction velocity studies and electromyography confirmed bilateral carpal-tunnel syndrome, which was greater on the left than on the right. R. 183–85. Spivey's hand symptoms failed to respond to wrist splints or decreased activity. She was diagnosed as having repetitive stress-injury syndrome. R. 180–82.

On March 9, 1995, Dr. Hermansdorfer performed a left carpal-tunnel release surgery on Spivey. R. 178. However, Spivey continued to have subjective complaints of numbness and tingling in her left hand and vague right upper extremity symptoms. R. 177. In May 1995, Spivey still had pain, and Dr. Hermansdorfer recommended that she continue with extremely light use of her left hand. R. 176. In June 1995, Dr. Hermansdorfer noted that Spivey was unable to continue her past repetitive work as an electronic board assembler. R. 174. He stated that Spivey's work restrictions included very limited light use of the left hand and no repetitive activities, including pushing, pulling, or grasping with a three-pound weight restriction. R. 175. In August 1995, Dr. Hermansdorfer recommended ongoing conservative care, and he prescribed pain medication. R. 173. He concluded that Spivey would not be able to return to any form of gainful employment in the near future. R. 173. In October 1995, Dr. Hermansdorfer indicated that Spivey had

reached maximum medical improvement with a 15 % permanent partial impairment of the whole person. R. 268.

In February 1996, Dr. Nitin Hate, M.D., a consultative physician, reported that Spivey continued to have tenderness and restricted range of motion in the left thumb. R. 194–95. Dr. Hate noted that Spivey's sensory motor, and reflex functions were completely normal. R. 195. Her coordination and dexterity for fine and gross movements were normal. R. 195. Dr. Hate concluded that Spivey maintained the residual functional capacity for "light" or "sedentary" work activity. R. 196.

On May 2, 1996, Spivey was examined by Dr. Stephen E. Haley, M.D., a consulting examiner for Social Security. R. 129–36. Dr. Haley reported that Spivey had residual arthritis of hands with limited range of motion of left thumb. R. 130. He also reported that Spivey suffered from bilateral carpal tunnel syndrome. R. 130. Dr. Haley noted a history of chest pains and noted that a cauterization showed a lesion. Spivey's chest pains were attributed to the lesion (a single vessel). R. 131. Dr. Haley further noted that Spivey's records showed that she suffered from diabetes and hypertension, although he noted that there was little recent data relating to the diabetes and hypertension. R. 131. Dr. Haley opined that Spivey had limited abilities in reaching, handling, and fingering. R. 132. She was limited to non-repetitive activities. R. 132.

In addition to Spivey's hand problems, Spivey was treated by Dr. Wright for hypertension and diabetes mellitus. R. 198. The medical records show occasional elevations in her blood sugar and blood pressure. Spivey also reported a history of coronary artery disease with chest pain. However, Spivey mentioned heart problems on only one occasion to Dr. Hate in February 1996. R. 198. At that time, she denied having chest pain. R. 198. The next time Spivey complained of chest pain

was to Dr. Wright in September 1996. R. 272. In October 1996, she specifically denied any further chest pain. R. 271.

Progress notes from Dr. Wright show that Spivey was treated for hypertension and insulin-dependent diabetes mellitus. R. 198–247, 269–282. She was prescribed a variety of anti-hypertensive medications, including norvasc and lopressor, in addition to her medications for diabetes mellitus of insulin, glucotrol, and glynase. Progress notes from Dr. Wright show elevations in Spivey's blood pressure and blood sugar levels. Yet, on these occasions, there were notations that the Spivey was not taking her medications or following her medical regiment as prescribed. The medical record shows that Spivey's high blood pressure and diabetes mellitus are controlled with medications.

**B. Analysis**

■ The ALJ found that Spivey suffered from the following severe impairments: obesity, insulin-dependent diabetes mellitus, status post surgery for carpal-tunnel syndrome, hypertension, and history of single-vessel coronary artery disease. R. 20, Finding 3. The ALJ determined that Spivey had the residual functional capacity to: "perform physical exertion requirements of work except for lifting more than 10 pounds with both hands." Docket No. 21, Finding 5. Based on this residual functional capacity, the ALJ concluded that Spivey was not able to perform her past relevant work as an electronic board assembler, but that she was able to perform the full range of sedentary work. R. 21, Finding 7. The ALJ's decision is not supported by substantial evidence.

The ALJ's decision completely ignores the limitations imposed by the Social Security consultant, Dr. Haley. Dr. Haley determined that Spivey suffers from manipulative limitations preventing her from performing repetitive reaching, handling, and fingering.[3] R. 132. Similarly, the ALJ

---

3. During the November 14, 2000 hearing, the Commissioner provided absolutely no reason for the ALJ's failure to consider the full extent of the limitations imposed by its own Social Security consultant, Dr. Haley.

failed to properly consider all the limitations imposed by Spivey's treating physician, Dr. Hermansdorfer, which are consistent with those limitations imposed by Dr. Haley. Dr. Hermansdorfer restricted Spivey to no repetitive pushing, pulling, or grasping. R. 175. He also considered Spivey to have reached maximum medical improvement. R. 268.

Both doctors's assessments include far greater limitations than those found by the ALJ. Moreover, the ALJ failed to give proper weight to Spivey's subjective complaints pain and symptoms. Dr. Hermansdorfer's progress reports document Spivey's history of pain relating to Spivey's left and right hands. Indeed, Dr. Hermansdorfer prescribed medication for Spivey's pain. R. 173.

Remand would be unnecessary in this case if all of the essential evidence were before the Appeals Council when it denied review, and the evidence were to establish without any doubt that Spivey was disabled. This case falls short of the standard for outright reversal without remand. Rather, remand under Sentence Four is appropriate because the record is insufficient to affirm, but also is insufficient for the district court to find Spivey disabled without any doubt. The Commissioner's decision is not supported by substantial evidence.

On remand, the Commissioner should develop a full and fair record of Spivey's residual functional capacity, in light of the limitations assessed by her treating physician and Drs. Hermansdorfer and Haley. The Commissioner also shall obtain the opinion of a vocational expert as to Spivey's ability to perform the "full range" of sedentary work in light of her exertional and non-exertional limitations.

## VI. *CONCLUSION*

For the reasons stated above, the decision of the Commissioner should be **REVERSED** and **REMANDED** under Sentence Four. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal. Any party appealing this decision shall file and serve a copy of the oral argument transcript within eleven days of the date of this order.

Feb. 9, 2000.