**Annese R. RILEY, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

**No. CIV. A. 00–M–761–N.**

United States District Court, M.D. Alabama, Northern Division.

April 11, 2001.

Pamela J. Gooden Cook, Montgomery, Alabama, for plaintiff.

Julia J. Weller of the United States Attorney's Office, Montgomery, Alabama, for defendant.

## ORDER

McPHERSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), the claimant, Annese R. Riley, brings this action to review a final decision by the Commissioner (Doc. # 1, ¶ 1). The Commissioner denied the claimant's claim for Supplemental Security Income ["SSI"] (Doc. # 1). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED.

## I. PROCEDURAL BACKGROUND AND FACTS

The claimant was born on 9 November 1954, and was 43 years old at the time of the administrative hearing (R. 9, 31, 47). The claimant has a high school education, and her past relevant work experience includes nurse aid and maid (R. 9, 31, 66). She alleges a disability onset date of 13 March 1999, due to a right leg injury, and she testified that she suffers from constant right hip pain (R. 41–45, 47).

The claimant protectively filed an application for benefits on 12 December 1996 (R. 47–50, 243–44). The application was denied initially and upon reconsideration (R. 51–56, 60–65, 245–52). Following an administrative hearing, the Administrative Law Judge ["ALJ"] denied the claimant's request for benefits in a decision dated 27 May 1999 (R. 8–19). On 12 May 2000, the Appeals Council denied the claimant's request for review (R. 2–3). Therefore, the hearing decision became the final decision of the Commissioner of Social Security. On 12 June 200, the claimant filed the instant action (Doc. # 1), and alleges that the Commissioner's decision is "not supported by substantial evidence concerning the issues of pain and the finding and discussion of credibility" (Doc. # 16, p. 15).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Act, this court's role is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

This court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420,

1422 (11th Cir.1997).[1] "In determining whether substantial evidence exists, [this court] must· view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. DISCUSSION

### A. *Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must also evaluate the claimant's case using this sequential evaluation process. *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984).

First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant's condition or impairment must be deemed "severe." [2] Third, it must be determined whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant is conclusively presumed to be disabled based on his or her medical condition.

If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the fourth step, namely an assessment of the claimant's residual functional capacity ["RFC"]. The assessment measures whether a claimant can perform past relevant work despite his or her impairment. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether, in light of his or her RFC, age, education and work experience, the claimant can perform other work. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

### B. *The ALJ's Findings*

Within the structure of the sequential evaluation process, the ALJ found that the medical evidence establishes that the claimant has the severe impairment of status-post fracture to right femur (R. 9). However, the ALJ also found that the severe impairment does not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (R. 15).

The ALJ found that the claimant's subjective symptoms "are not credible to the extent and intensity alleged" (R. 15). Although the ALJ found that the claimant cannot perform her past relevant work, he

---

**1.** In *Graham,* the Court of Appeals stated that "substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 129 F.3d at 1422. *See also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

**2.** The condition is severe if it significantly limits claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c)(1), 416.920(c)

also found that the claimant has the RFC to perform the full range of sedentary work (R. 15). The ALJ noted that the claimant has no nonexertional limitations (R. 15). As a result of his evaluation, the ALJ concluded that the claimant was not under a "disability," as defined in the Act, at any time through the date of this decision, and she was thereby ineligible for any benefits (R. 15).

### C. Subjective Complaints of Pain

The claimant contends that the ALJ "failed to properly [sic] evaluate her subjective complaints of pain" (Doc. # 16, p. 4). The Court of Appeals has stated that in examining a claimant's complaints of pain and other objective medical symptoms, "[t]he Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) (citations omitted). The Court of Appeals has provided further guidance on the matter:

> After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984). If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987).

*Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992) (citations omitted).

To be sure, there exists an underlying medical condition[3] that would reasonably support the *existence* of the pain about which the claimant complains. However, in discrediting the claimant's allegations of pain, the ALJ found that the "claimant does not have a medically determinable impairment which reasonably could be expected to produce the actual subjective symptoms, in the *amount* and *degree*, alleged by the claimant" (R. 12) (emphasis added). The ALJ noted that the evidence does not support a finding that the claimant's subjective symptoms are of an intensity or persistence to prevent sedentary work (R. 13). Thus, the ALJ concluded that the claimant's testimony as to the extent, intensity, and duration of subjective symptoms and resulting limitations is credible only to the extent that she is limited to sedentary work (R. 14).

■ The ALJ noted that the claimant had not received any follow-up treatment related to her right femur fracture since March 1995, when she was hospitalized for repair of the fracture (R. 14). Upon review of the medical record, the objective medical evidence indicates that the claimant did not sustain any consistent medical regimen for treatment of pain in her right hip. Musculoskeletal examinations in July 1996 and January 1997 revealed decreased range of motion in the claimant's lower right extremity (R. 180, 263). However, in July 1997 when the claimant sought treatment for her right hip and leg pain, the triage nurse noted that the claimant was ambulatory and "was trying to get on [d]isability" (R. 183). The claimant was simply given Tylenol, Motrin and Advil,

---

3. This underlying medical condition is: severe status-post fracture of the right femur (R. 15). In March 1995, the claimant suffered a distal third femur fracture on the right from an automobile accident (R. 10). Subsequently, she underwent insertion of an interlocking Russell–Taylor, Delta type nail (R. 10).

and instructed to follow up with her family doctor as needed (R. 188). In a consultative examination on 22 August 1997, Dr. Philip Golomb ["Dr. Golomb"] noted that the claimant had no motor or sensory abnormalities; walked with a limp favoring her right lower limb, but did not use an assistive device; and had a "healed spiral fracture femur" (R. 204, 205). Thus, it is significant that the claimant does not *require* any assistive device for ambulation and takes only over-the counter medication for the alleged pain (R. 40, 48, 204, 261).

Upon reviewing the objective medical evidence in the record, the court concludes that substantial evidence exists to support the ALJ's conclusion that the claimant's allegations are not credible to the extent alleged. Consequently, objective medical evidence supporting the extent of claimant's complaints of pain has not been established. Because the claimant failed to establish that the objective medical evidence confirms the severity of the pain alleged, the court finds that the ALJ properly considered and analyzed the claimant's subjective complaints of pain. The court also finds that the ALJ clearly articulated his reasons for discrediting the claimant's subjective representations, to the extent that he did so.

### D. Opinions of Treating Physicians

The claimant contends that the ALJ improperly discredited the opinions of physicians Dr. Delores Victoria ["Dr. Victoria"], and Dr. James Parks ["Dr. Parks"] (Doc. # 16, p. 8–9). She argues that the ALJ "failed to give appropriate weight to the evidence" and concludes that this matter is due to be reversed or remanded for further development (Doc. # 16, p. 9).

The only evidence in the record from Dr. Victoria is a note on a prescription form dated 25 January 1999 (R. 242). This note states: "[the claimant] is not able to work because of injury from car accident in 1995" (R. 242). On 28 January 1997, after a musculoskeletal and physical examination, Dr. Parks noted that the claimant has "residual pain and limitation of motion in the left hip and leg" and that "she does use an assistant device, which *seems* necessary" (R. 180) (emphasis added). Dr. Parks concluded that "as examined today, she would have difficulty in sitting, standing, walking, lifting, and carrying, none in handling objects, hearing, or speaking, but some in traveling" (R. 180).

The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986); *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir. 1985). A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. The Court of Appeals has found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *See Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280–81 (11th Cir.

1987). The Court of Appeals has also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records. *See Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532–33 (11th Cir.1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991).

■ The court finds that the ALJ properly discredited the opinions of these physicians and clearly articulated his reasons for doing so. The ALJ specifically addressed Dr. Parks' opinion of the claimant's limitations and discounted its credibility, stating:

> Dr. Parks opined on January 18, 1997, that the claimant would have difficulty sitting, standing, walking, lifting, and carrying; however, his opinion is not supported by his objective clinical findings, nor did he describe any functional limitations. Dr. Parks only examined the claimant on one occasion and his opinion is given little weight if any weight

(R. 12). Dr. Parks, indeed, examined the claimant on only one occasion: 18 January 1997 (R. 180). In a report written the day of this examination, Dr. Parks stated "[a]s examined today, [the claimant] would have difficulty in sitting, standing, walking, lifting, and carrying, none in handling objects, hearing, or speaking, but some in traveling" (R. 180).

Dr. Parks did not elucidate the level of difficulty that these actions posed for the claimant. For example, it is impossible to determine from his notes whether the claimant would have "difficulty" lifting 10, 20, or 30 pounds, walking 20 feet or 50 feet, or standing 2 hours or 8 hours. Moreover, Dr. Parks limited his medical opinion to address the claimant only "as examined [that] day" (R. 180); thus, he had absolutely no comparative indications or indication that her status was continuing or sudden, typical or atypical. Predict-

ably, because of those voids, he was utterly unable to articulate a prognosis.

Finally, the medical record does not contain any treatment notes, progress notes or lab reports from Dr. Parks. Accordingly, the court finds that based upon the objective medical evidence and evidence in the record as a whole, it was entirely reasonable for the ALJ to question or discredit Dr. Park's statement of disability.

■ The ALJ also specifically addressed Dr. Victoria's opinion of the claimant's disability and discounted its credibility, stating:

> On 25 January 1999, Dr. Victoria stated that the claimant was not able to work because of an injury from a car accident in 1995. However, her statement is not supported by any objective findings, nor any rationale to support her conclusion. Her assessment is not entitled to any weight.

(R. 12). The court agrees. Dr. Victoria's statement of the claimant's inability to work is not only vague, but may arguably be construed as conclusory. Its lack of support in the record is patent. The medical record does not contain any treatment notes, progress notes or laboratory reports from Dr. Victoria. Moreover, this statement can hardly be construed as a medical opinion of disability. Accordingly, the court finds that, based upon the objective medical evidence and evidence in the record as a whole, it was reasonable for the ALJ to question or discredit Dr. Victoria's and Dr. Parks' opinions of the claimant's disability and functional limitations.

### E. Vocational Expert Testimony

The claimant contends that the ALJ's finding that she can perform sedentary work is not supported by substantial evidence (Doc. # 16, p. 10). The claimant asserts that "[t]he Eleventh Circuit has stated [in *Wolfe v. Chater,* 86 F.3d 1072,

1077 (11th Cir.1996)] that an ALJ may use the Grids as a framework, but must also introduce independent evidence, *preferably from a vocational expert,* of the existence of jobs in the national economy that the claimant is able to perform" (Doc. # 16, p. 10). Therefore, the claimant concludes that "[s]ince there was no vocational expert at her hearing and no introduction of other independent evidence to support the ALJ's opinion ... the ALJ's opinion is not supported by substantive evidence" (Doc. # 16, p. 10).

The court finds that the claimant has misconstrued the law as stated by the Court of Appeals. The Court of Appeals has stated that "[i]f *nonexertional impairments* exist, the ALJ may use the grids as a framework to evaluate vocational factors but also must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform." *Wolfe v. Chater,* 86 F.3d 1072, 1077 (11th Cir.1996) (citing *Welch v. Bowen,* 854 F.2d 436, 439–40 (11th Cir.1988) (per curiam)) (emphasis added). That principle, however, is inapplicable here because the ALJ found that the claimant had no nonexertional limitations (R. 15). Accordingly, testimony from a vocational expert was not required in this case. The court thus finds substantial evidence to support the ALJ's decision.

For all of these reasons, the court finds no error in the ALJ's decision and finds as well that the decision is supported by substantial evidence and is the result of the application of appropriate legal standards. The claimant's contentions are without merit.

## IV. CONCLUSION

For the reasons cited herein, it is the Order of this court that the decision of the Commissioner denying benefits to the claimant be AFFIRMED.