[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11713
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 6, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-03479-LTW

TRACY J. BROWN,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 6, 2011)

Before BARKETT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Tracy Brown appeals the district court's order affirming the Social Security

Administration's denial of her applications for disability insurance benefits and

supplemental security income. Brown first argues that the Administrative Law Judge ("ALJ") improperly gave more weight to the conclusions of a nonexamining doctor than to the conclusions of her treating and examining doctors. Second, Brown argues that the ALJ did not adequately explain his decision to not fully credit her subjective complaints. For the reasons set forth below, we affirm the district court's order.

I.

Brown filed concurrent applications for disability insurance benefits and supplemental security income, pursuant to Titles II and XVI of the Social Security Act, on August 10, 2006.

Medical records showed that Dr. Timothy Bryan Kennedy treated Brown once every three months from September 6, 2005, until February 20, 2009. He diagnosed Brown as having bipolar disorder. In 2007, Kennedy completed a psychiatric/psychological impairment questionnaire form regarding Brown's condition and limitations. Among other things, he marked that Brown had sleep and mood disturbances, emotional lability, generalized persistent anxiety, and suicidal ideation and attempts. Brown's symptoms included depression, anxiety, insomnia, and racing thoughts. Brown was moderately limited in a number of areas, including her ability to understand, remember, and follow both simple and

detailed instructions; maintain a regular work schedule; work with others without being distracted; accept instructions and criticisms from supervisors; and get along with coworkers. Brown was markedly limited in her ability to concentrate for extended periods of time, work without interruptions from psychological symptoms, work at a consistent pace without an unreasonable number of breaks, and interact appropriately with the public. Brown could not tolerate even a small amount of work stress. Kennedy estimated that Brown would miss two to three days of work per month due to her impairments or treatment.

In February 2009, Kennedy again completed a psychiatric/psychological impairment questionnaire form regarding Brown's condition and limitations. Among other things, he marked that Brown had sleep and mood disturbances, emotional lability, intermittent manic syndrome, and difficulty thinking or concentrating. Brown was mildly limited in her ability to understand and remember simple instructions and interact appropriately with the public. She was moderately limited in a number of areas, including her ability to follow simple instructions; understand, remember, and follow detailed instructions; maintain her attention and concentration for extended periods of time; maintain a normal work schedule without interruptions from psychological symptoms; work with others

without being distracted; and get along with coworkers and supervisors. Brown was incapable of tolerating even low amounts of work stress.

Over the course of his treatment of Brown, Kennedy repeatedly noted in his treatment notes that she had normal memory and concentration and that she did not have depression, insomnia, hopelessness, anxiety, or racing thoughts. Nevertheless, on February 2, 2007, Kennedy wrote that Brown was "presently totally disabled and unable to work for at least one full year."

In a daily activities report completed on September 18, 2006, Brown reported that in a typical day she took her medication, did housework, took a nap, and cooked dinner. She had panic attacks in crowds, could concentrate for about 15 to 30 minutes at a time, and could follow written instructions, but had a hard time remembering spoken instructions. In an undated daily activities report, Brown reported that some days she did not get out of bed. Other days, she could do a little housework and make dinner. She could not follow written or spoken instructions well and had panic attacks when she was in new situations.

Dr. Virginia S. Wood, a licensed psychologist, examined Brown on December 12, 2006. Wood found that Brown's thought processes were "logical and coherent" and her attention span and concentration were "within normal limits." Her remote memory was intact, but her immediate memory was poor.

Based on the examination, Wood believed that Brown's "concentration [was] barely adequate for the most basic work-related functions" and that Brown could not maintain a typical work schedule or an adequate pace at work. Brown was able to understand and follow simple instructions provided she could remember them. Brown also had "severe difficulties relating to coworkers, superiors and members of the public." Wood concluded that Brown met the criteria for Moderate Bipolar I Disorder, as well as Panic Disorder Without Agoraphobia.

On January 9, 2007, Dr. Mark A. Williams prepared a mental residual functional capacity ("RFC") assessment of Brown. Williams found that Brown was not significantly limited in a number of areas, including her ability to understand, remember, and follow simple instructions; concentrate for extended periods of time; maintain a normal work schedule without interruption from psychological symptoms; work with others without being distracted; or get along with coworkers. Brown was moderately limited in her ability to understand, remember, and follow detailed instructions and to interact appropriately with the general public and supervisors. Williams noted that Brown was bipolar and suffered from anxiety. Nevertheless, she had had no extended episodes of decompensation; had mild restrictions in daily living activities; and had moderate difficulties maintaining social functioning, concentration, persistence, and pace.

Williams explained that Brown had been receiving treatment for being bipolar for several years and that she had been able to "work until she had a run in with her boss." Williams had considered "the full data set" and did not give Wood's opinion that Brown was severely bipolar any weight because it was not reasonably based on the evidence of impairment.

Brown's applications were denied initially and upon reconsideration. She requested and was granted an administrative hearing before an ALJ. At the hearing, Brown testified that she was able to do some housework, but she needed help with it because she had racing thoughts and trouble concentrating. She had panic attacks that lasted an hour to an hour and a half once every three to four weeks. Crowds sometimes caused Brown to have panic attacks, and she avoided places where she might run into people. Her panic attacks gave her an upset stomach, sweaty palms, a racing heartbeat, and racing thoughts. She also had trouble with recollection, trouble thinking straight, and mood swings that tended to be more on the downside. Brown had trouble sleeping because her thoughts raced. She had not received inpatient care or been in an emergency room for any reason in the prior four years. Brown did not believe that she could do a job with routine tasks where she did not have to interact with coworkers or supervisors

because her racing and irrational thoughts would distract her too much. These thoughts were debilitating, and she was unable to focus on other thoughts.

Joe Mann, a vocational expert, testified that there were unskilled, light-level jobs with simple, repetitive tasks that required minimal interaction with coworkers and supervisors and no interaction with the public that an individual of Brown's age, education, and work experience would be able to perform available in the economy.

The ALJ found that Brown was not entitled to disability benefits or social security income because she was not "disabled" within the meaning of the Social Security Act. The ALJ found that Brown had the severe impairments of depression and anxiety, but that her impairments did not meet or equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. To this end, the ALJ found that Brown was moderately limited in her daily living activities; social functioning; and ability to maintain concentration, persistence, and pace. The ALJ noted that, while Brown testified that she had trouble concentrating on housework and interacting with others, she previously reported that she was able to perform housework, there was no evidence that she had had any "serious incident[s]" with others, and she had not had any episodes of decompensation or been hospitalized during the relevant period. The ALJ thus specified that Brown was to have no

7

interaction with the public and only occasional interaction with coworkers and supervisors to account for her moderate limitation in social functioning.

The ALJ also considered Wood's opinions and concluded that Wood's testing showed that Brown had normal thought processes, attention, and concentration, but a deficient short-term memory. The ALJ found that Wood's conclusions as to Brown's severe limitations in concentrating, maintaining a work schedule, and interacting with others were not supported by her examination results, which showed only a significant limitation in short-term memory. The ALJ gave Williams's opinion more weight than Wood's opinion of Brown's severe limitations. The ALJ emphasized that Williams had considered the entire longitudinal record available at the time, and his opinion was more consistent with the record, including Wood's examination findings. The ALJ thus agreed with Williams that Brown had severe, although not disabling, depression and anxiety.

Next, the ALJ found that Brown had the RFC to perform work that involved a light level of exertion; simple, routine, repetitive tasks with no more than two-step instructions; no interaction with the public; and only occasional interaction with coworkers and supervisors. Although the record did not support a finding that Brown's exertional capacity was limited, the ALJ specified a light level of exertion due to Brown's complaints of fatigue. The ALJ considered

8

Kennedy's treatment records, but did not give Kennedy's conclusory finding of disability significant weight. Kennedy's treatment records did not show a "pattern of marked difficulty" or support a conclusion that Brown could not perform simple tasks that required little interaction with others. The ALJ thus gave Williams's opinion more weight. The ALJ also found Brown's assertion that she did not have the specified RFC to work "not fully credible." Finally, the ALJ found that, although Brown was unable to perform any of her past relevant work, there were jobs in significant numbers in the national economy that Brown could perform. Accordingly, the ALJ concluded that Brown was not disabled.

The Appeals Council denied Brown's request for review, and the district court affirmed the Commissioner's decision.

## II.

We review a Social Security case to "determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotations omitted). "We may not decide the facts anew,

reweigh the evidence, or substitute our judgment for that of the Commissioner." *Id.* (quotations and alteration omitted).

The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d). These factors apply to both examining and nonexamining doctors. *Id.* §§ 404.1527(f), 416.927(f). The ALJ must give a treating physician's opinion "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation omitted). Good cause exists where the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241. An ALJ is to accord "little weight" to a nonexamining doctor's report "if it contradicts an examining doctor's report" because "such a report, standing alone, cannot constitute substantial evidence." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).

Finally, the Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Specifically, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." *Id.*

Substantial evidence supports the ALJ's decision not to give considerable weight to the opinions of Dr. Kennedy or Dr. Wood. First, the ALJ correctly noted that it could not give controlling weight to Kennedy's opinion that Brown was disabled because that was a question for the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Next, the ALJ had good cause not to give controlling weight to Kennedy's opinions. Kennedy's opinions were conclusory, as the forms that he completed in 2007 and 2009 regarding Brown's limitations did not reference his treatment records or adequately explain his opinions. *See Phillips*, 357 F.3d at 1241. Moreover, the ALJ was correct that Kennedy's treatment records did not support his opinion that Brown was disabled. Although Kennedy found that Brown was moderately limited in a number of areas, he repeatedly noted in his treatment notes that Brown had normal memory and concentration and no depression, hopelessness, anxiety, or racing thoughts. Thus, Kennedy's opinions of Brown's severe limitations were inconsistent with his own

11

treatment notes, and the ALJ had good cause not to give his opinions "substantial or considerable weight." *Phillips*, 357 F.3d at 1240-41.

The ALJ also had good cause not to give Wood's opinions considerable weight because they were inconsistent with the results of her examination of Brown. *See id.* Wood opined that Brown's concentration was insufficient for most work-related functions, but her examination showed that Brown's thought processes, concentration, and attention span were normal. Wood's examination did show that Brown had a poor short-term memory, which the ALJ took into account by specifying an RFC with simple, routine instructions.

Next, the ALJ did not err in giving more weight to Dr. Williams's opinion than to Kennedy's or Wood's opinions. The ALJ was not required to accord "little weight" to Williams's report because it did not contradict Kennedy's treatment records or Wood's exam results. *Edwards*, 937 F.2d at 584. Williams's opinions that Brown was not significantly limited in following simple instructions, concentrating, or getting along with coworkers and only moderately limited in following detailed instructions and interacting with the public and supervisors were consistent with Wood's exam results showing that Brown's thought processes, concentration, and attention span were normal, but that she had a poor short-term memory. These opinions were also consistent with Kennedy's notes

and opinions that Brown had normal memory and concentration; that she was not depressed, hopeless, anxious, or experiencing racing thoughts; and that she was mildly limited in her ability to interact with the public and moderately limited in her ability to interact with coworkers and supervisors. Furthermore, because Williams's opinions were consistent with Kennedy's and Wood's medical evidence, it is not Williams's report alone that constitutes the substantial evidence supporting the ALJ's decision. *See Edwards*, 937 F.2d at 584.

Finally, although it is not clear whether the ALJ was correct that Williams based his opinions on the entire longitudinal record, the ALJ's decision is nonetheless supported by substantial evidence. As discussed above, the ALJ also gave more weight to Williams's opinions than to those of Kennedy or Wood because Williams's opinions were more consistent with the record as a whole. Accordingly, even if the ALJ was mistaken in finding that Williams had reviewed the entire longitudinal record, his decision to give Williams's opinions more weight than Kennedy's or Wood's opinions is sufficiently supported.

## III.

The individual seeking Social Security disability benefits bears the burden of proving that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant may establish that she has a disability through her "own

13

testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In such a case, the claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (quotation omitted).

In evaluating a claimant's testimony, the ALJ should also consider: (1) the claimant's daily activities; (2) the "duration, frequency, and intensity" of the claimant's symptoms; (3) "[p]recipitating and aggravating factors"; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ is to consider these factors in light of the other evidence in the record. *Id.* §§ 404.1529(c)(4), 416.929(c)(4). If the ALJ discredits the claimant's testimony as to her subjective symptoms, he must "clearly articulate explicit and adequate reasons for" doing so. *Dyer*, 395 F.3d at 1210 (quotation omitted). However, the ALJ need not make an explicit credibility finding so long as "the implication [is] obvious to the reviewing court." *Id.* (quotation omitted). The ALJ must show that it considered the claimant's "medical condition as a whole." *Id.* (quotations omitted).

14

Here, the ALJ sufficiently assessed Brown's testimony as to her limitations. The ALJ was not required to make any explicit credibility finding because the decision includes a thorough discussion of Brown's allegations in light of the record as a whole. *See Dyer*, 395 F.3d at 1210. Specifically, the ALJ found that Brown had moderate limitations in daily living activities, social functioning, and concentration based on her testimony that she had trouble completing chores and getting along with others, the fact that she had not had any "serious incident[s]" with others, and the fact that she had not been hospitalized during the relevant period. Based on these factors, the ALJ determined that Brown was able to work, despite her depression and anxiety, so long as she had no interaction with the general public and only occasional interaction with coworkers and supervisors. The implication of the ALJ's credibility finding—that Brown's complaints were "not fully credible"—is thus clear to us. *See Dyer*, 395 F.3d at 1210. That is, it is clear that the ALJ found Brown's complaints credible, but that he found her complaints as to the severity of her limitations not credible. Therefore, the ALJ considered Brown's subjective complaints in light of the record as a whole and adequately explained his decision not to fully credit Brown's alleged limitations on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

For the foregoing reasons, we affirm the district court's order.

**AFFIRMED.**