[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14787
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 10, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:10-cv-00509-TEM



BARBARA A. SIMONE,

                                                                    Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                                                                    Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 10, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Barbara Simone appeals from the district court's order which affirmed the Administrative Law Judge's ("ALJ") termination of her disability insurance benefits pursuant to 42 U.S.C. § 405(g). On appeal, Simone argues that: (1) substantial evidence did not support the ALJ's determination that Simone's medical condition had substantially improved as of May 1, 2005; (2) substantial evidence did not support the ALJ's determination that the improvement in Simone's medical condition was related to her ability to do work; and (3) the ALJ erred by failing to give greater weight to the opinion of Simone's treating physician, Dr. Robert Bianco, regarding her ability to work. After thorough review, we affirm.

We review a Social Security decision "to determine if it is supported by substantial evidence and based on proper legal standards." Crawford v. Comm'r, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation omitted). Substantial evidence consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). The burden rests with the claimant to prove that she is disabled and entitled to Social Security benefits. See 20 C.F.R. § 404.1512(a).

An ALJ may terminate a claimant's benefits upon finding that there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work and the claimant is now able to engage in

substantial gainful activity. 42 U.S.C. § 423(f)(1). To determine whether disability benefits should be terminated, the ALJ must conduct a multi-step evaluation process and determine:

(1) Whether the claimant is engaging in substantial gainful activity;

(2) If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) If impairments do not meet a listing, whether there has been medical improvement;

(4) If there has been improvement, whether the improvement is related to the claimant's ability to do work;

(5) If there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

(6) If medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(7) If the claimant has a severe impairment, whether the claimant can perform past relevant work;

(8) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

See 20 C.F.R. § 404.1594(f).

First, we reject Simone's claim that substantial evidence does not support the ALJ's determination that Simone's medical condition had substantially improved because the ALJ ignored evidence that she also continuously suffered from other

3

severe cardiovascular conditions, specifically carotid artery disease.  To determine if there has been medical improvement, the ALJ must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence.  McAulay v. Heckler, 749 F.2d 1500, 1500 (11th Cir. 1985); see 20 C.F.R. § 404.1594(c)(1).  "Medical improvement" is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled . . . ."  20 C.F.R. § 404.1594(b)(1); see also 20 C.F.R. § 404.1594(c)(1).

Here, substantial evidence supports the ALJ's finding that there had been substantial improvement in Simone's medical condition as of May 1, 2005.[1]  As Simone's medical records demonstrate, a February 23, 2005, echocardiogram showed that her cardiomyopathy had improved -- showing an improved ejection fraction of approximately 50 percent, on the lower limit of normal -- so that it no longer met the Medical Listing.  Moreover, Simone's treating cardiologist, Dr. Bianco, said in letters and treatment notes on several occasions between February 2002 and April 2005 that Simone's cardiomyopathy was stable, she was doing well, and she was able to exercise, at one point walking up to one mile each day.  Dr. John Bolla's March and

---

[1]  Further, because Simone does not challenge the ALJ's determination that her cardiomyopathy had medically improved as of May 1, 2005, she has waived that issue.  See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

April 2005 notes and communications also support the ALJ's finding of substantial medical improvement, as he reported that Simone exercised 30 minutes a day, 3 times a week; carotid artery sonography revealed mild stenosis of 30 percent bilateral internal carotid arteries, resulting in a diagnosis of "minor carotid artery disease"; she was doing very well, with no clinical signs of congestive heart failure; the most recent echocardiogram had demonstrated a normal ejection fraction of 50 percent; and the holter monitor had not demonstrated any significant abnormalities.

Although March 13, 2000, arteriograms showed mild to moderate (less than 50 percent) narrowing of the internal carotid arteries, high grade stenosis (greater than 90 percent) at the origin of the external carotid arteries, and moderate stenosis (50 to 60 percent) at the origin of the left vertebral artery, other medical records between 2000 and May 1, 2005, demonstrated that Simone's carotid artery disease was not a major focus of her medical treatment and that it perhaps even improved during this time period. Dr. Bianco's medical notes included carotid artery disease in his assessment on April 25, 2001, but most of his later assessments did not include that diagnosis. Dr. Bianco also noted no symptoms of carotid artery disease, such as a carotid bruit, between April 25, 2001, and April 2005. Furthermore, as the ALJ noted, Simone's February 25, 2005, Doppler sonography tests revealed mild (30 percent) bilateral internal carotid artery stenosis -- which is a significant improvement

5

over the March 2000 test results. And finally, the fact that, in 2008, Simone underwent two surgeries to treat her carotid artery disease is not relevant to whether her medical impairment had medically improved as of May 1, 2005, the date on which her disability ended.

We are also unpersuaded by Simone's claim that substantial evidence did not support the ALJ's determination that the improvement in Simone's medical condition was related to her ability to do work. If the ALJ determines that there has been medical improvement, then he must determine whether that improvement is related to the claimant's ability to do work. See 20 C.F.R. § 404.1594(f)(4). The regulations provide that "[m]edical improvement is related to [the claimant's] ability to work if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] capacity to do basic work activities . . . ." 20 C.F.R. § 404.1594(b)(3). The regulations provide specific instructions for how this determination will be made if the claimant's previous disability determination was based on the fact that her impairment met or equaled the severity contemplating by the Listing of Impairments:

> If [the Social Security Administration's] most recent favorable decision was based on the fact that [the claimant's] impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of this subpart, an assessment of [the claimant's] residual functional capacity would not have been made. If medical improvement

6

has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make [the] most recent favorable decision, [the Social Security Administration] will find that the medical improvement was related to [the claimant's] ability to work. . . . If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to [the claimant's] ability to work.

20 C.F.R. § 404.1594(c)(3)(i).

In this case, the ALJ properly determined that, because the February 2005 echocardiogram showed an improved ejection fraction of 50 percent, in combination with evidence from her other medical records, Simone no longer had an impairment or combination of impairments equal to the same listing that was met at the time of her last disability determination. Simone's initial disability determination was based on her diagnosis for cardiomyopathy and the fact that the results of the November 2001 echocardiogram showed an ejection fraction of 15 percent. This diagnosis met the requirements for Medical Listing 4.02(B), which, among other factors, required a documented ejection fraction of 30 percent or less. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Medical Listing 4.02(B) (2002). Thus, no assessment of Simone's residual functional capacity was made at the time of her initial disability determination. See 20 C.F.R. § 404.1594(c)(3)(i). Because Simone no longer met or equaled the same listing that she met when she was previously found disabled, substantial evidence

necessarily supports the ALJ's finding that her medical improvement was related to her ability to do work. See id.

Finally, we find no merit to Simone's argument that the ALJ erred by failing to give greater weight to the opinion of Simone's treating physician, Dr. Bianco, regarding her ability to work. "[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); see 20 C.F.R. § 404.1527(d)(2) (providing that, generally, more weight is given to opinions from treating sources). However, we have found "good cause" to afford less weight to a treating physician's opinion where the opinion is conclusory or inconsistent with the physician's own medical records or where the evidence supports a contrary finding. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Furthermore, the ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (quotation omitted).

On this record, the ALJ did not err by discounting the Dr. Bianco's opinions regarding Simone's ability to work. As for Dr. Bianco's residual functional capacity evaluation, Dr. Bianco provided no information about any clinical data or other objective medical evidence on which he based his opinion, only signing the form in

8

the space provided for that information. Dr. Bianco's response to Simone's counsel's letter requesting confirmation that the residual functional capacity evaluation was not contradicted by his treatment notes provided no additional support for his opinion. And, the December 29, 2005, and April 4, 2007, letters Dr. Bianco wrote "[t]o whom it may concern," expressing his opinion that Simone was still disabled and unable to work, were also not supported by any medical evidence.

Moreover, substantial evidence supports the ALJ's determination that Dr. Bianco's opinions regarding Simone's ability to work were contradicted by his treatment notes and other medical evidence. As discussed previously, the February 2005 echocardiogram demonstrated an improved ejection fraction of approximately 50 percent, on the lower limit of normal. In addition, Dr. Bianco's own letters and treatment notes reported on several occasions between February 2002 and April 2005 that Simone's cardiomyopathy was stable, she was doing well, she was able to walk up to one mile each day, and she stayed active caring for her mother. Further, Dr. Bolla's notes and communications demonstrated that Simone exercised 30 minutes a day, 3 times a week, she was doing very well, with no clinical signs of congestive heart failure; the 2005 echocardiogram demonstrated a normal ejection fraction of 50 percent; and the holter monitor had not demonstrated any significant abnormalities. Lastly, the ALJ adequately set forth his reasons for discounting Dr. Bianco's opinions

regarding Simone's ability to work, as he explained that he gave no weight to Dr. Bianco's opinions because they were inconsistent with Bianco's treatment notes and objective medical evidence. Accordingly, we affirm.

**AFFIRMED.**