[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14611
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00378-AKK

KIMBERLY YVETTE NANCE,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,
Andrew Saul, Commissioner,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 18, 2019)

Before WILLIAM PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Kimberly Yvette Nance appeals the district court's order affirming the denial of her claim for Social Security disability benefits. She argues that the Administrative Law Judge erred by giving little weight to the opinions of her treating physician. Because we conclude that substantial evidence supported the decision of the ALJ, we affirm.

## I.    BACKGROUND

### A. Procedural Background

In October 2013, when she was 41 years old, Nance applied for disability insurance benefits for a period of disability beginning on September 17, 2013. Her disability claim was based on a failed lumbar disc repair, osteoarthritis, fibromyalgia, and depression. Before September 2013, Nance worked as a certified nursing assistant. After a hearing, an ALJ denied Nance's application on August 18, 2015. The Appeals Council denied her request for review on January 9, 2017, making the ALJ's decision the final decision of the Social Security Commissioner. Nance then sought review of the Commissioner's decision in the district court. The district court affirmed the Commissioner's decision, finding that the ALJ's decision was supported by substantial evidence.

### B. The Evidence Before the ALJ

Nance completed a function report in which she described her daily activities. She explained that she generally ate cereal, sandwiches, and fast food

2

that someone bought her, and she may cook one meal a month. She stated that she can drive and ride in a car but that she prefers for someone else to drive because of her pain. According to the report, she goes to the doctor once a week, shops once a month for 30 minutes, shops once every other week for 10 to 15 minutes, and visits her father. She does one load of laundry a day though it takes her all day because she takes breaks to rest.

On September 17, 2013, Nance saw Dr. Ronnie Lewis at Rapid Care Family Medical Clinic for anxiety and depression. Dr. Lewis diagnosed situational depression, myalgia, myositis, and chronic back pain. Dr. Lewis referred Nance to Rheumatology Associates of North Alabama for fibromyalgia, where she was seen by Dr. Christie Thomas. Dr. Thomas did not diagnose fibromyalgia and was "unable to elucidate any type of rheumatologic condition at this time," but noted that she would follow-up closely on Nance's labs. On September 18, 2013, Dr. Grant Huntzinger performed an MRI of Nance's lumbar spine. He noted that Nance had mild lower lumbar spondylosis, most severe at the L4–L5 level, as well as moderate L4–L5 and severe L5–S1 level facet arthropathy.

On October 10, 2013, Nance saw Dr. Anthony Sims at Henagar Family Medicine. Nance reported moderate, aching, generalized pain. Associated symptoms included "chronic myofascial pain, but not depression, joint pain (multiple sites), leg cramps, morning stiffness in joints, muscle spasms, or

numbness in arm." Dr. Sims's examination showed no clubbing, cyanosis, or edema, and normal range of motion and strength. Dr. Sims diagnosed low back pain, fibromyalgia, and hypothyroidism. Dr. Sims recommended that Nance engage in "[r]egular, low-impact exercises three times a week," such as "walking, swimming, water aerobics, & biking."

Nance then saw Dr. Anjaneyulu Alapati of HH Neurological Associates on November 5, 2013, complaining of left side facial numbness. Upon examination, Nance had 5/5 motor strength in all extremities, normal coordination, and normal gait. Dr. Alapati assessed left side facial numbness for which he scheduled a brain MRI, and fibromyalgia for which he recommended Nance continue her medication. That same day, Nance also saw Dr. Mark G. Freeman at the Orthopaedic Institute of Chattanooga. Dr. Freeman diagnosed osteoarthritis of the hip and lumbar radiculopathy. Dr. Freeman noted that an x-ray of Nance's right hip showed mild degenerative joint space narrowing and that she had "very minimal" osteoarthritis in her right hip. Dr. Freeman observed that Nance walked with an antalgic gait but found that her range of motion and strength in her hips were normal.

On November 25, 2013, Dr. Robert Estock, a state agency psychological consultant, reviewed the record and stated that Nance had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning,

4

and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Estock also stated: "[Nance] can fix light meals and does laundry. She can drive, shop and pay bills. She is credible but she does not have listing level functional limitations."

On December 6, 2013, Nance saw Noel N. Lawson, FNP, for follow-up after a therapeutic lumbar facet injection. Nance reported that her pain had not decreased since the injection and described it as constant achy, sharp, and stabbing pain in the lower lumbar spine on both sides. Nance also stated that standing, prolonged sitting, bending, and movement made the pain worse. Lawson advised Nance to avoid bed rest lasting four days or longer, resume normal activities, continue with water aerobics, and remain off work until her next appointment. Nance saw Lawson again on January 22, 2014, when Nance stated that she was 60% better than her last office visit. Lawson advised Nance to resume normal activities and continue with conservative measures but did not discuss a work restriction.

Nance returned to Dr. Sims on April 8, 2014, and April 29, 2014. At both visits, Nance described her pain as aching, generalized, chronic, and moderate. Dr. Sims noted that her range of motion and strength were normal. Dr. Sims at both visits recommended "[r]egular, low-impact exercises three times a week" and "[l]ow-stress exercises such as walking, swimming, water aerobics, & biking." On

5

April 29, 2014, Dr. Sims provided an Attending Physician's Statement in which he stated that Nance was restricted from sitting for more than one hour, standing for more than 30 minutes, and lifting any amount of weight. Dr. Sims also completed a physician's certification dated May 18, 2014, that stated that Nance could not engage in substantial gainful activity due to fibromyalgia but could perform activities of daily living even though they took her longer to complete.

On May 28, 2014, Nance reported to Dr. Sims with generalized, moderate edema. Dr. Sims recommended that Nance reduce sodium intake, avoid stressful activities, and exercise regularly. Nance saw Dr. Sims again on October 6, 2014. She described her back pain as moderate and said that it improved with anti-inflammatory use but worsened with activities of daily life. On examination, Nance had normal range of motion and strength. Dr. Sims recommended that Nance use over-the-counter pain medications; avoid manipulation of the spine, extensive extension or flexion of the spine, and twisting; "[e]xercise three to four times a week, once or twice a day as tolerated for 20–40 minutes each time;" and apply heat to the affected area as needed.

On October 13, 2014, Nance saw Dr. Franklin C. Sammons with The Orthopaedic Center because she had increased pain in her hip and leg from a fall on September 3, 2014. An MRI scan showed facet arthropathy that read as mild, but that Dr. Sammons believed was moderate, with a significant amount of

6

additional bone formation on the right side. Dr. Sammons recommended a lumbar fusion surgery. The surgery was performed on November 7, 2014, by Dr. Sammons. At a follow-up visit on January 1, 2015, Nance told Dr. Sammons that she was still having pain (though she did not describe the level of pain) and was having side effects from some of her medications. X-rays showed that the hardware in her back was in a good position. Dr. Sammons changed her medications to ameliorate the side effects and recommended physical therapy. Nance told Dr. Sammons that she was walking about 2.5 miles a day, and Dr. Sammons recommended that she decrease the distance to one mile a day. Nance received physical therapy three times in January and February of 2015. The physical therapist noted that Nance's prognosis was "good" though she had limitations in home management, leisure activities, and work activities.

In a letter dated March 4, 2015, Dr. Sims opined that Nance's surgery had been a failed lumbar intervertebral disc repair and that she could not be gainfully employed because of her physical ailments and the mental demands of a work environment. On March 31, 2015, Nance saw Dr. John Roberts at Tennessee Valley Pain Consultants for dull aching pain in her lower back. Dr. Roberts recommended physical therapy, pool therapy, daily stretches, and weight loss. An April 6, 2015, CT scan ordered by Dr. Sammons showed that the hardware from her surgery was in "good position." It also showed a vertebral body hemangioma

7

but noted that the spinal canal was well maintained in the area of Nance's fusion. No significant disc abnormality, or spinal canal or neural foraminal stenosis was found.

## C. The ALJ's Decision

On August 18, 2015, the ALJ denied Nance's application for social security disability. The ALJ applied the five-step sequential evaluation for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a). First, the ALJ determined that Nance had not been engaged in substantial gainful activity since September 17, 2013, when her disability was alleged to have started. Second, the ALJ determined that Nance had the severe impairments of obesity, lumbar degenerative disc disease, and depression. At step three, the ALJ determined that none of Nance's impairments, considered individually or in combination, met or "medically equal[ed] the severity of one of the impairments included in 20 CFR Part 404, Subpart P, Appendix 1. . . ." Fourth, the ALJ explained that:

> [Nance] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except [she], as a part of a job requirement, should not climb ladders, ropes, scaffolds, nor perform around work hazards. [Nance] could occasionally climb ramps or stairs, kneel or crawl; and [she] could frequently stoop or crouch. Additionally, [Nance] could understand and remember simple instructions and carry out those instructions and sustain attention to routine tasks for extended periods. [Nance] could tolerate ordinary work pressure, but should avoid quick decision-making, rapid changes and multiple demands. [Nance] would benefit from regular rest breaks and a slowed pace but can maintain a work pace consistent with the mental demands of competitive level work. Contact with the public

8

should be no more than occasional. [Nance] can accept supportive feedback and can adapt to infrequent, well-explained changes in the work requirements or work process.

In determining Nance's residual functional capacity, the ALJ considered the medical records. The ALJ determined that Nance's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" because they were "not substantiated to the degree alleged by the medical evidence of record." The ALJ explained that although Nance had been instructed to participate in physical therapy regularly, she had failed to do so. The ALJ also explained that Nance's "back condition appears to wax and wane, and [she] has experienced significant improvement with some relatively conservative treatment." Further, the ALJ explained that Nance had self-reported her pain as "dull" and that her "aching" back pain improved with anti-inflammatory use.

The ALJ next turned to the medical opinion evidence. As relevant to Nance's appeal, the ALJ decided to give little weight to the opinions expressed in Dr. Sims's March 4, 2015, letter for the following reasons. First, the question of whether a person is disabled is a matter for the Commissioner to decide. The ALJ also noted that Dr. Sims was a general practitioner and not a specialist, meaning his opinion was less probative than others. Furthermore, Dr. Sims's opinions were inconsistent with his treatment records because there were no post-surgery treatment records and the pre-surgery records described Nance's back pain as

moderate and aching. The ALJ also gave little weight to Dr. Sims's April 2014 Attending Physician's Statement regarding Nance's physical limitations because it was inconsistent with Nance's own statement regarding her activities of daily living. The ALJ gave little weight to Dr. Sims's opinion expressed in a May 2014 physician's certification that Nance was unable to engage in any substantial gainful activity because Dr. Sims's opinion again concerned an issue reserved to the Commissioner and was unsupported by his statement that she took longer to perform activities of daily living.

At the fifth and final step, the ALJ determined that Nance could not perform her past work as a certified nursing assistant but that, based on the testimony of a vocational expert, there are jobs that exist in sufficient numbers in the national economy that she could perform, including laundry worker and marker. The ALJ also explained that if Nance's residual functional capacity were reduced to sedentary level work, there would still be jobs that exist in sufficient numbers that she could perform, including machine operator feeder or surveillance system monitor. Accordingly, the ALJ determined Nance was not disabled for the period between September 17, 2013 through August 18, 2015.

The Appeals Council denied Nance's request for review on January 9, 2017, making the ALJ's decision the final decision of the Commissioner.

## D. The District Court's Decision

Nance filed a complaint in the district court under 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision on March 10, 2017. The district court determined the ALJ had not erred by finding that Nance's testimony about her pain was not credible, that the ALJ had not erred in giving little weight to Dr. Sims's opinions, and that the ALJ's residual functional capacity determination and conclusion that Nance could perform other work in the national economy were supported by substantial evidence. The district court thus affirmed the Commissioner's final decision on August 31, 2018. Nance filed her notice of appeal on October 31, 2018—one day after the deadline for filing such notice pursuant to Rule 4(a)(1)(B)(iii) of the Federal Rules of Appellate Procedure.[1] However, the district court allowed Nance to file out of time pursuant to Rule 4(a)(5)(A) of the Federal Rules of Appellate Procedure.[2] Her appeal is thus timely.

## II.    STANDARD OF REVIEW

---

[1] "The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is: . . . a United States officer or employee sued in an official capacity." Fed. R. App. P. 4(a)(1)(B)(iii).

[2] "The district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A).

11

"In Social Security appeals, we review *de novo* the legal principles on which the Commissioner's decision is based," but "we review the resulting decision only to determine if it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). This Court defines substantial evidence as "less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* We will not decide the facts anew, make credibility determinations, or reweigh the evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "We review de novo the district court's decision on whether substantial evidence supports the ALJ's decision." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.  DISCUSSION

### A. Applicable Statutory and Regulatory Framework.

"An individual claiming Social Security disability benefits must prove that she is disabled." *Moore*, 405 F.3d at 1211. To determine whether a claimant is disabled, the ALJ uses the five-step, sequential evaluation process outlined by the Social Security Regulations. *Winschel*, 631 F.3d at 1178. That process requires the ALJ to determine whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable impairment or combination of impairments; (3) has an impairment, or combination thereof, that meets or equals one of the listed impairments included in 20 C.F.R. Part 404,

Subpart P, Appendix 1, and meets the duration requirement; (4) can perform past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of her residual functional capacity, age, education, and work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)).  If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

As Nance's appeal concerns the determination of her residual functional capacity in step four of the analysis, we outline the step four requirements in greater detail. At step four, the ALJ must determine a claimant's residual functional capacity "based on all the relevant medical and other evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (quoting 20 C.F.R. § 404.1520(e)). "Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. An ALJ considers many factors when weighing medical opinion evidence, including the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and whether the source is a specialist. 20 C.F.R. § 404.1527(c). The ALJ must give a treating physician's medical opinion substantial or considerable weight unless the ALJ clearly articulates good cause for discrediting that opinion. *Winschel*, 631 F.3d at 1179. "Good cause exists 'when the: (1) treating physician's

13

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Phillips*, 357 F.3d at 1241). Opinions by a medical source that a claimant is disabled are not given any special weight—regardless of the source—because that issue is reserved for the Commissioner's determination. 20 C.F.R. § 404.1527(d)(1)–(3).

**B. Whether the ALJ Erred by Giving Little Weight to Dr. Sims's Opinions.**

Nance argues that the ALJ failed to properly weigh the opinions of her treating physician, Dr. Anthony Sims. In particular, there are three statements from Dr. Sims that Nance argues should have been given greater weight: (1) an April 29, 2014, Attending Physician's Statement; (2) a physician's certification dated May 19, 2014; and (3) an opinion letter dated March 4, 2015. For the reasons that follow, substantial evidence supports the ALJ's decision to discount each of Dr. Sims's opinions.

As a general matter, the ALJ properly granted little weight to Dr. Sims's opinions that Nance is disabled and cannot perform her occupational duties because those are legal determinations reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d). Thus, the ALJ did not err by giving them little weight. *See* 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . .").

14

With respect to Dr. Sims's April 29, 2014, opinion that Nance is restricted from performing any of her past occupational duties, including walking, lifting, bending, moving, or sitting, and that she cannot sit for more than one hour or stand for more than thirty minutes, the ALJ gave Dr. Sims's opinion little weight because it was inconsistent with Nance's admitted activities of daily living. Although the ALJ did not expressly state which of Nance's admitted daily activities are inconsistent with the Dr. Sims's opinion, the ALJ cited Nance's functional report, which stated that she engaged in activities such as driving, shopping, doing laundry, and cooking—all of which would involve some sitting, standing, walking, and lifting. The ALJ thus had sufficient reason for discounting Dr. Sims's opinion as inconsistent. *See Phillips*, 357 F.3d at 1241 (discounting a physician's opinion because it conflicted with treatment notes and the claimant's own testimony regarding her daily activities). Further, although not discussed by the ALJ, it is clear from the record that the Dr. Sims's opinion is contradicted by his own treatment notes, which state that Nance had normal range of motion, strength, and gait, and recommended regular exercise. Substantial evidence supports the ALJ's decision to discount Dr. Sims's April 2014 Attending Physician's Statement.

Substantial evidence also supports the ALJ's decision to discount Dr. Sims's May 19, 2014, opinion that Nance cannot engage in any substantial gainful activity due to her fibromyalgia. In the same document, Dr. Sims's stated that Nance can

15

perform activities of daily living (though it takes her longer than a well person) and that her pain worsened with activity and stress. The ALJ gave little weight to Dr. Sims's opinion for two reasons: (1) because it concerns a matter reserved to the Commissioner, 20 C.F.R. § 404.1527(d); and (2) because taking longer to perform activities of daily living and having some pain with activity and stress is not inherently disabling. The ALJ was entitled to determine whether Dr. Sims's opinion was internally inconsistent, *Winschel*, 631 F.3d at 1179, and it found that it was unsupported by relevant evidence, 20 C.F.R. § 416.927(c)(3). As further support, it is clear from the record that Dr. Sims's May 2014 opinion that Nance cannot engage in substantial activity is inconsistent with his treatment notes concerning Nance's range of motion, strength, and gait, and recommending exercise. For those reasons, substantial evidence supports the ALJ's decision.

Finally, substantial evidence supports the ALJ's decision to discount Dr. Sims's March 4, 2015, letter stating that Nance's back surgery "is considered a failed lumbar intervertebral disc repair." The ALJ gave this opinion little weight because Dr. Sims is a general practitioner—not a specialist. Whether a physician is a specialist in the area in which he is giving an opinion is a relevant consideration. 20 C.F.R. § 404.1527(c)(5). It was thus appropriate for the ALJ to give more weight to the opinion of Dr. Sammons—an orthopedic surgery specialist—who found that the hardware from Nance's back surgery was in good position and

16

determined that she had no significant disc abnormalities. The ALJ also explained

that Dr. Sims's opinion was inconsistent with his own treatment records. *See*

*Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (discounting treating

physician's opinion because it conflicted with treatment records). In particular, the

ALJ noted that there were no post-surgery treatment notes from Dr. Sims in the

record,[3] but that his notes prior to surgery reflected that Nance described her back

pain as aching and moderate and as improving with anti-inflammatory use. Finally,

as the ALJ explained, the objective medical records do not support Dr. Sims's

opinion. *See, e.g., Edwards*, 937 F.2d at 583 ("The treating physician's report may

be discounted when it is not accompanied by objective medical evidence. . . .").

Nance's post-surgery MRI and x-ray results showed that the hardware was in good

position and that Nance had no significant disc abnormalities. Nance's physical

therapy notes also suggest that her post-surgery prognosis was good.

Although Nance disagrees with the ALJ's weighing of the evidence, our task

is to determine only whether the ALJ applied the proper legal standards and arrived

at a decision that is supported by substantial evidence. *Crawford v. Comm'r of Soc.*

*Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("We review the Commissioner's

---

[3] Nance submitted to the Appeals Council treatment notes from examinations conducted by Dr. Sims in February and April of 2015. Those notes, however, reflect that Nance's pain improved with anti-inflammatory use and that Dr. Sims recommended Nance engage in "[r]egular, low-impact exercises three times a week," including "walking, swimming, water aerobics, & biking." Thus, as the district court concluded, those notes do not undermine the ALJ's decision to give little weight to Dr. Sims's opinion.

17

decision to determine if it is supported by substantial evidence and based on proper legal standards") (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). We may not decide facts anew or reweigh the evidence. *Winschel*, 631 F.3d at 1178. In sum, we conclude that the ALJ's decision to discount Dr. Sims's opinions was supported by substantial evidence.[4]

### C. Whether this Court Should Reverse Because the District Court Engaged in Post Hoc Rationalization.

Nance suggests that we reverse because the district court gave "a long, four and a half page *post hoc* rationalization for affirming the ALJ." Although we disagree that the district court's entire discussion of Dr. Sims's opinions was a post hoc rationalization, the district court may have ventured beyond the ALJ's decision in one respect. It appears the district court determined that all of Dr. Sims's opinions were contrary to his treatment notes. In contrast, the ALJ found the March 2015, opinion contrary to the treatment notes but did not discuss that factor with respect to the other opinions. Agency actions, however, must be upheld on the

---

[4] Nance argues that the ALJ erred in discounting Dr. Sims's opinions while giving great weight to the opinion of Dr. Estock (a non-examining psychiatrist) that Nance had moderate limitations in her activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence, or pace. We acknowledge that "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). But these opinions are not contrary to those of Dr. Sims who did not opine on Nance's social functioning or on her ability to maintain concentration, persistence, or pace. Further, the only opinion Dr. Sims gave on Nance's activities of daily living was that she could perform those activities even though they took her longer to complete, which is consistent with Dr. Estock's finding of moderate limitations.

18

same bases articulated in the agency's order. *See FPC v. Texaco, Inc.*, 417 U.S. 380, 397 (1974); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (explaining that this Court will not "affirm simply because some rationale might have supported the ALJ's conclusion."). The discrepancy between the district court and the ALJ's decision is nevertheless irrelevant because our review is limited to the agency's decision. *See Wilson*, 284 F.3d at 1221 ("We review de novo the district court's decision on whether substantial evidence supports the ALJ's decision."); *Owens*, 748 F.2d at 1514 ("As we have indicated many times, the scope of our review is limited to determining whether there is substantial evidence in the record as a whole to support the Secretary's findings.").

Because substantial evidence supports the ALJ's decision, we affirm.

**AFFIRMED.**

19